UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                           :

**UNITED STATES OF AMERICA**,

                          Plaintiff,

               – against –

**ROGELIO PINTO JORQUERA**,

                         Defendant.

------------------------------------------------------------ X

                                   :   **MEMORANDUM DECISION AND ORDER**

                                   :   19-CR-479 (AMD)

**ANN M. DONNELLY**, United States District Judge:

       The defendant is charged with illegal reentry after removal, in violation of 8 U.S.C.

§§ 1326(a) and (b)(1).  Before the Court is the defendant's motion to dismiss the indictment.

(ECF No. 21.)  For the reasons explained below, the motion is denied.

## BACKGROUND

       The defendant is a native and citizen of Chile.  (ECF No. 21-2 at 1.)  Over the past 20 or

so years, the defendant has been in and out of the United States; he has been removed at least

three times.  (ECF No. 21-6 at 2, 4; ECF No. 21-5 at 2; ECF No. 22-7.)  In March of 2005, the

defendant entered the United States at or near San Ysidro, California.[1]  (*Id.*)  On February 10,

2009, Edison Police Department officers arrested the defendant for shoplifting in New Jersey.[2]

---

[1] The defendant entered the United States sometime before May of 2000, and then left at some point, possibly voluntarily.  (ECF No. 21-8 at 3-4; ECF No. 22 at 7 ("It appears that, at some point after this conviction, the defendant voluntarily left the United States and returned in 2005.").)  There is no evidence of a removal order issued prior to 2005.  Neither the date that the defendant left the country before 2005 or whether he did so voluntarily affects my analysis.

[2] The defendant had other convictions for similar offenses.  In July of 2000, he pled guilty to grand larceny in the fourth degree, a felony, in New York.  (ECF No. 21-8 at 3; ECF No. 22-2 at 6-7.)  In January of 2007, he pled guilty to petit larceny, a misdemeanor, in New York.  (ECF No. 21-1 at 4; ECF No. 22-2 at 13.)  In April of 2008, he was arrested for shoplifting in New Jersey, and he pled guilty in July of 2009.  (ECF No. 21-5 at 2; ECF No. 22-2 at 14-15.)

(ECF No. 22 at 7; ECF No. 22-2 at 15.)  On February 26, 2009, while the defendant was in

custody at the Middlesex County Jail on the shoplifting charges, immigration enforcement agent

David Chrzanowski served the defendant with a Notice to Appear (the "NTA").  (ECF No. 21-1

at 4.)  In the NTA, the Department of Homeland Security ("DHS") alleged that the defendant

was subject to removal pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality

Act (the "INA"), which provides in part that an immigrant present in the United States without

being admitted or paroled is removable.[3]  (ECF No. 21-2 at 1.)  The NTA ordered the defendant

to appear in front of an immigration judge in Newark, New Jersey but did not provide the date or

time of the hearing.  (*Id.*)  Instead, the NTA directed the defendant to appear "on a date to be set

at a time to be set to show why you should not be removed from the United States based on the

charge(s) set forth above."  (*Id.*)

On that same day, Agent Chrzanowski served the defendant with a proposed Stipulated

Request for Removal Order and Waiver of Hearing (the "Stipulated Removal Request"), which

was written in English and Spanish.  (ECF No. 21-1 at 5; ECF No. 21-3.)  The defendant signed

the Stipulated Removal Request, and initialed next to each paragraph, including the following:

> I have received a copy of the Notice to Appear ("NTA") dated February 19, 2009, which contains my full, true, and correct name.  The allegations and charges on the NTA have been read to me in a language that I understand.

> I have been advised of my right to be represented by an attorney of my choice, at my own expense, during these proceedings.  I have also received a List of Free Legal Services Providers.

---

[3] The NTA also alleged that the defendant was convicted in New York of petit larceny, and charged the defendant with being subject to removal pursuant to Section 212(a)(2)(A)(i)(I) of the INA for being "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime."  (ECF No. 21-2 at 1, 3.) However, this allegation and charge are crossed out and initialed.  (*Id.*)  The government acknowledges that "the NTA did not charge the defendant with committing a felony as one of the grounds for removal."  (ECF No. 22 at 16 n.3.)

2

I waive my right to be represented by an attorney.  I will represent myself in these proceedings.

I have been advised that by signing this request, I will be giving up the following legal rights that I would have in a hearing before an immigration judge: a) the right to question witnesses, b) the right to offer and to object to evidence, and c) the right to require the government to prove my removability.

I waive these rights.  I do not want to have a hearing before an immigration judge, and I request that the immigration judge issue an order based solely on the written record.

I admit that all of the factual allegations contained in the NTA are true and correct.  I also agree that I am removable as charged on the NTA.

I do not wish to apply for asylum, withholding of removal, or protection under the Convention Against Torture.

I do not want to apply for any relief from removal for which I may be eligible . . . . This may include voluntary departure, adjustment of status, change of status, cancellation of removal, registry, and naturalization.

I understand that, depending upon the facts and circumstances of my case, I cannot return to the United States for a minimum of ten years, and possibly forever, without special permission from the Attorney General of the United States.  I also understand that returning without proper permission could result in being removed again and/or being prosecuted for illegal reentry which may result in punishment of up to twenty years in prison.

This written statement has been read to me in a language that I understand.  I also had an opportunity to read this written statement.  I fully understand its consequences.  I submit this request for a removal order voluntarily, knowingly, and intelligently.  I realize that by signing this document, I will be removed from the United States.

(ECF No. 21-3 at 2-4.)  Agent Chrzanowski certified that he read the Stipulated Removal Request to the defendant in Spanish.  (*Id.* at 5.)

On March 4, 2009, on the basis of the signed Stipulated Removal Request, Immigration Judge Mirlande Tadal (the "IJ") entered an order for the defendant's removal (the "Stipulated Removal Order").  (ECF No. 21-4.)  The order reads in pertinent part:

The respondent has submitted a written statement wherein he/she waives a personal hearing before the Immigration Judge, admits the truthfulness of the allegations contained in the Notice to Appear (NTA) and concedes removability as charged in

3

the NTA.  The respondent has made no application for relief from removal proceedings which would allow him/her to remain in the United States, but instead requests issuance of an order by this Court for his/her removal to the country of <u>Chile</u>.  The Department of Homeland Security (DHS) concurs with the request.

The respondent['s] signed request constitutes a conclusive determination of the alien's removability from the United States.  Based upon the respondent's admissions and concessions, removability has been established.  Appeal has been waived by both parties.

(*Id.* at 1.)  The IJ did not make an explicit finding that the defendant's waiver was knowing and voluntary.  (*Id.*)  The defendant did not appeal from or otherwise challenge the removal order, and was removed to Chile on October 13, 2009.  (ECF No. 21-6 at 2.)

Just five days later, on October 18, 2009, the defendant reentered the United States in or near Hidalgo, Texas.  (ECF No. 21-6 at 3.)  United States Border Patrol agents encountered the defendant in or near Falfurrias, Texas and served him with a Notice of Intent / Decision to Reinstate Prior Order.  (ECF No. 21-5 at 3; ECF No. 21-8 at 3.)  The defendant was removed on January 21, 2010.  (ECF No. 21-6 at 4.)  The defendant reentered the United States, and on August 1, 2018, immigration authorities in New York arrested him, reinstated the Stipulated Removal Order and removed him on August 30, 2018.  (ECF No. 21-5 at 1-2.)

Nevertheless, the defendant reentered the United States yet again.  Law enforcement officers arrested him on October 10, 2019.  On October 17, 2019, a grand jury in the Eastern District of New York charged the defendant in a one-count indictment with illegal reentry after removal, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).  (ECF No. 7.)  Specifically, the indictment charged that the defendant, "an alien who had previously been removed from the United States after a conviction for the commission of a felony, was found in the United States, without the Attorney General of the United States and the Secretary of the United States Department of Homeland Security having expressly consented to such alien's applying for admission."  (*Id.* at 1-2.)  On March 23, 2020, the defendant filed a motion to dismiss the

4

indictment.  (ECF No. 21.)  The government opposed.  (ECF No. 22.)  I heard oral argument on July 12, 2021.  In post-argument briefing, the defendant argued for the first time that he did not knowingly waive his rights pursuant to the Stipulated Removal Request.  (ECF No. 35 at 14; *see also* ECF No. 21-1 at 15-17.)  In that regard, he submitted an affidavit in which he claims that Agent Chrzanowski did not read the Stipulated Removal Request to him.[4]  (ECF No. 35-2 ¶ 14.)

## LEGAL STANDARD

"Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for various defects, including 'a failure to state an offense.'" *United States v. Marsalis*, 314 F. Supp. 3d 462, 465 (E.D.N.Y. 2018) (quoting Fed. R. Crim. P. 12(b)(3)(B)).  "Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment 'must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Stringer*, 730 F.3d 120, 123-24 (2d Cir. 2013).  "In evaluating a motion to dismiss, the Court accepts as true all of the allegations of the indictment." *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) (alteration omitted) (internal quotation marks and citation omitted).  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  "An indictment that does not set out all of the essential elements of the offense charged is defective." *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012).

---

[4] He also suggested but did not actually claim that he did not read the form.  (ECF No. 35-2 ¶¶ 11, 14.)

"Under § 1326 of the INA, it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States." *United States v. Scott*, 394 F.3d 111, 116 (2d Cir. 2005). A defendant "can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated." *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004). In *United States v. Mendoza-Lopez*, the Supreme Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. 828, 837-38 (1987). "Congress effectively codified the holding of *Mendoza-Lopez* in 8 U.S.C. § 1326(d)." *Scott*, 394 F.3d at 116. Section 1326(d) allows a defendant to attack collaterally the validity of a deportation order. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). Under Section 1326(d), "[t]o prevail on such a challenge, a defendant must demonstrate that (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'" *United States v. Nunez*, 375 F. Supp. 3d 232, 238-39 (E.D.N.Y. 2018) (alteration omitted) (internal citation and quotation marks omitted). "'The requirements are conjunctive,' and a defendant's failure to establish any one part forecloses collateral attack and dismissal of the indictment on the basis of the invalidity of the underlying deportation order." *Id.* at 239 (quoting *Fernandez-Antonia*, 278 F.3d at 157). As the text of the statute makes plain, the defendant has the burden of proof on a collateral attack to the validity of the underlying removal order. *See* § 1326(d); *see also United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012) (noting that the defendant "bears the burden of showing that entry of the removal order was fundamentally unfair").

**DISCUSSION**

The defendant makes three arguments in support of his motion to dismiss the indictment. First, citing *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the defendant contends that the indictment is defective because it does not allege that he knew that he had been removed or deported, and therefore does not set out the essential elements of an illegal reentry offense pursuant to Section 1326(d). (ECF No. 21-1 at 2.) Second, the defendant argues that the 2009 Stipulated Removal Order on which the indictment was premised was defective because the NTA did not specify the time and place of a hearing, and the defendant never received a curative notice. (*Id.* at 2-3.) Thus, he argues, the IJ never had jurisdiction to order his removal, so the "purported removal order was a nullity and void *ab initio.*"[5] (*Id.* at 3.) Finally, the defendant says the Stipulated Removal Order was invalid under Section 1326(d) because the IJ did not make an explicit finding that the defendant's waiver of hearing was voluntary, knowing and intelligent in accordance with 8 C.F.R. § 1003.25(b). (*Id.* at 3-4.) I address each argument in turn.

**I.    Whether the Indictment Lays Out All the Essential Elements of Illegal Reentry Under Section 1326**

Relying on *Rehaif*, the defendant contends that the indictment should be dismissed because it does not allege that the defendant knew that he had been previously deported.[6] (ECF

---

[5] The defendant appears to make the jurisdictional argument under the Section 1326(d) collateral attack framework and also as an independent reason for dismissal. However, as explained below, the Section 1326(d) framework is the only avenue by which the defendant can challenge the validity of a prior removal order for the purposes of moving to dismiss the indictment.

[6] The indictment alleges that the defendant "had previously been removed from the United States after a conviction for the commission of a felony." (ECF No. 7.) The defendant argues that he "was not deported after a conviction for a felony, but rather entering without permission or parole." (ECF No. 21-1 at 6.) The government contends that "although the NTA did not charge the defendant with committing a felony as one of the grounds for removal, the defendant was in fact deported (in 2009) after having pleaded guilty to a felony (in 2001)," and that "[t]here is no requirement for a prosecution under Section 1326 that the immigration judge remove the defendant for having committed a felony."

No. 21-1 at 6.)  In fact, in *Rehaif*, the Supreme Court addressed a different statute with different elements.  Accordingly, *Rehaif* does not compel dismissal of the indictment.

Rehaif was charged with possessing firearms as an alien unlawfully in the United States, in violation of two statutes—18 U.S.C. §§ 922(g) and 924(a)(2).  *Rehaif*, 139 S. Ct. at 2194. Under Section 922(g), it is unlawful for certain individuals to possess firearms, including felons and immigrants "illegally or unlawfully in the United States."  Section 924(a)(2) provides that anyone who "knowingly violates" Section 922(g) shall be fined or imprisoned for up to ten years.  At Rehaif's trial, the judge charged the jury, over Rehaif's objection, that the government did not have to prove that Rehaif "knew that he was illegally or unlawfully in the United States." *Id.*  The Supreme Court held "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm;" "[a] defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require."  *Id.* at 2200, 2198.  As the Court explained, "[t]he term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)."  *Id.* at 2195; *see also id.* at 2196 ("As a 'matter of ordinary English grammar,' we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." (citation omitted)).

The defendant's argument that *Rehaif* adds a scienter requirement to Section 1326 is not persuasive.  In *Rehaif*, the Court said nothing about Section 1326.  Rather it addressed the intersection of two different statutes—§§ 922(g) and 924(a)(2).  Focusing on the text of Section

---

(ECF No. 22 at 16 n.3.)  The defendant's argument is that the indictment is defective because it does not allege that he knew his status (ECF No. 21-1 at 7 ("Following *Rehaif*, Mr. Pinto cannot be presumed to know his status as a deportee.")), not because of the nature of his conviction.  Therefore, I do not address this issue.

924(a)(2), the Court found that Congress meant to "require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id.* at 2196. Section 1326, on the other hand, does not include a "knowing" element, or any particular mental state, for that matter.[7]

The defendant also cites the Supreme Court's observation that courts generally "apply the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text." 139 S. Ct. at 2195 (citing *Staples v. United States*, 511 U.S. 600, 606 (1994); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). But if the Court intended to make such a sweeping ruling—adding a scienter element to all statutes—it would have done so explicitly.[8] *Id.* at 2211. Moreover, it is currently the law in the Second Circuit that Section 1326 does not contain a scienter requirement. *See United States v. Torres-Echavarria*, 129 F.3d 692, 697 (2d Cir. 1997); *see also United States v. Champegnie*, 925 F.2d 54, 55 (2d Cir. 1991). In *Torres-Echavarria*, the defendant, citing *Staples* and *X-Citement Video*, argued that "the district

---

[7] Rehaif's case was also in a much different posture, involving a challenge to a conviction after trial, not a motion to dismiss the indictment. As explained above, an indictment need only "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and . . . enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Stringer*, 730 F.3d at 124 (citation omitted).

[8] Indeed, the Court acknowledged it has "typically declined to apply the presumption in favor of scienter in cases involving statutory provisions that form part of a 'regulatory' or 'public welfare' program and carry only minor penalties." *Rehaif*, 139 S. Ct. at 2197. At least one of the two provisions under which the defendant is charged—Section 1326(a)—is such a regulatory offense. *See United States v. Rizo-Rizo*, No. 20-50172, 2021 WL 5024364, at *4 (9th Cir. Oct. 29, 2021) ("Because § 1326(a) is a regulatory offense, the government need only prove that the accused is an alien and that he illegally entered or attempted to illegally enter the United States after being deported."). Section 1326(a) imposes a maximum imprisonment term of not more than two years and does not implicate the "potentially harsh penalty" the Court considered in *Staples*. *Staples*, 511 U.S. at 616 (holding that 26 U.S.C. § 5861(d) was not a regulatory statute in part because it carried a potential penalty of ten years' imprisonment). Section 1326(b)(1)—the other provision under which the defendant is charged—carries a potential penalty of up to ten years' imprisonment. However, the Court has upheld the constitutionality of strict liability offenses, *see Rehaif*, 139 S. Ct. at 2212 (Alito, J., dissenting) (collecting cases), including offenses with harsh penalties, *id.* at 2211 (Alito, J., dissenting) ("The majority does not claim that the Constitution requires proof of *mens rea* for every status element or every element that has the effect of criminalizing what would otherwise be lawful conduct.").

court failed to inquire into his subjective belief regarding the legality of his re-entry." 129 F.3d at 697. The Second Circuit rejected the argument, finding Torres-Echavarria's reliance on decisions "that imported scienter requirements into other criminal statutes [was] misplaced," and that Section 1326 "contains no language requiring proof of a particular mental state. It simply states that a previously deported alien may not reenter the United States without the express consent, obtained in advance, of the Attorney General." *Id.* (quoting *Champegnie*, 925 F.2d at 55).

"[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law." *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 486 (S.D.N.Y. 2014) (alteration in original) (citation omitted). In *Rehaif*, the Supreme Court based its decision on the text of Sections 922(g) and 924(a)(2). The Court said nothing about Section 1326, and did not create a general scienter requirement for other criminal statutes. Thus, there is "no conflict, incompatibility, or inconsistency between that case [*Torres-Echavarria*] and intervening Supreme Court law that would render prior Circuit precedent not binding on" this Court. *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2763 (2020). While the Second Circuit has not yet addressed whether *Rehaif* means that Section 1326 includes a scienter requirement, other circuits have concluded that it does not. *See, e.g.*, *United States v. Flores-Villar*, 536 F.3d 990, 999 (9th Cir. 2008) ("[T]he government had to prove beyond a reasonable doubt that [the defendant] knew he was in the United States, not that the underlying action (entering and remaining in this country) was itself illegal."), *aff'd*, 564 U.S. 210 (2011), *and abrogated by Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017); *United States v. Aceves*,

809 F. App'x 449, 450 (9th Cir. 2020) (recognizing *Flores-Villar* as good law after *Rehaif*), *cert. denied*, 141 S. Ct. 1717 (2021).[9]

Accordingly, the defendant's motion to dismiss the indictment based on *Rehaif* is denied.

## II.   Whether the Underlying Removal Order Was Invalid

I turn next to the defendant's argument that the underlying Stipulated Removal Order was invalid.  The defendant contends that the NTA did not specify a time and date for a hearing as required by 8 C.F.R. § 1003.15(b), and the IJ therefore had no jurisdiction to issue the order.  The defendant says this is so even though he signed the Stipulated Removal Request on the same day that he was served with the NTA, thus obviating the need for a hearing.  The defendant also argues that the IJ's failure to make an explicit finding that the waiver was voluntary, knowing and intelligent in accordance with 8 C.F.R. § 1003.25(b) renders the removal order invalid.  I evaluate whether the defendant satisfies the three requirements under Section 1326(d) to sustain a collateral attack on the Stipulated Removal Order.[10]  I address first the defendant's argument

---

[9] The Ninth Circuit decided *Aceves* after the motion to dismiss in this case was fully briefed.

[10] As noted earlier, the defendant seems to claim the IJ's alleged lack of jurisdiction as a reason to dismiss under the Section 1326(d) framework and as a stand-alone reason.  (ECF No. 21-1 (arguing separate from Section 1326(d) analysis that "the immigration court lacked jurisdiction and its purported removal order was a nullity and void *ab initio*").)  District courts in this circuit have consistently held that in "[i]n order to challenge the jurisdiction of the immigration court, [the defendant] must satisfy the § 1326(d) factors."  *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202, 206 (E.D.N.Y. 2020); *see also United States v. Maldonado*, No. 18-CR-308, slip op. at 30 (E.D.N.Y. Feb. 11, 2019) ("Section 1236(d) could not be clearer—in order to challenge a deportation order, a defendant must satisfy [its] prerequisites.").  I consider the defendant's jurisdictional argument only within the Section 1326(d) framework.

regarding the IJ's failure to make a determination as to whether his waiver was voluntary, knowing and intelligent.

a.  **Violation of 8 C.F.R. § 1003.25(b)**

In 2009, the defendant signed the Stipulated Removal Request, which was in English and Spanish, acknowledging the NTA's allegations that he was removeable, and waiving, among other things, his right to counsel and a hearing before an immigration judge, as well as the opportunity to apply for various forms of relief, including asylum, withholding from removal, protection under the Convention Against Torture, and voluntary departure.  The defendant signed the last page and initialed each statement, including this statement: "I submit this request for a removal order voluntarily, knowingly, and intelligently.  I realize that by signing this document, I will be removed from the United States."  (ECF No. 21-3 at 4.)  The IJ signed the Stipulated Removal Order based on the defendant's request.  (ECF No. 21-4.)

The INA and the governing regulations expressly allow for removal orders premised on stipulated removal requests.  *See* 8 U.S.C. § 1229a(d); 8 C.F.R. § 1003.25(b).  If an individual "enters into a stipulated request for a deportation or exclusion order with a written waiver of his or her appearance and rights, the Immigration Judge may sign the order of deportation or exclusion based upon the written record."  Stipulated Requests for Deportation or Exclusion Orders, 59 Fed. Reg. 24,976 (proposed May 13, 1994).  Stipulated removal requests and the ensuing stipulated removal orders benefit both the government and the removable individual. Stipulated removal procedures allow individuals subject to removal to "opt[] for speedy deportation in lieu of the long-shot chance of obtaining discretionary relief from removal after a protracted legal battle."  *United States v. Soto-Mateo*, 799 F.3d 117, 123 (1st Cir. 2015); *see also* Stipulated Requests for Deportation or Exclusion Orders, 60 Fed. Reg. 26,351-52 (May 17, 1995) (Stipulated deportations are intended to "allow the prompt departure of imprisoned

12

criminal aliens who have no apparent avenue of relief from deportation or exclusion and who wish to avoid immigration-related detention after having completed their criminal sentences."). Moreover, "[a]n IJ's ability to enter stipulated removal orders 'facilitates judicial efficiency in uncontested cases,' and serves to 'alleviate overcrowded federal, state, and local detention facilities.'" *United States v. Ramos*, 623 F.3d 672, 675 (9th Cir. 2010) (quoting Stipulated Requests for Deportation or Exclusion Orders, 59 Fed. Reg. at 24,976).

> Stipulated removal orders are governed by Section 1003.25(b), which reads as follows:

> Stipulated request for order; waiver of hearing.  An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien . . . and the Service.  The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any.  If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent.

8 C.F.R. § 1003.25(b).  As stated in the 2009 Stipulated Removal Order, the IJ reviewed the paperwork, including the defendant's Stipulated Removal Request, and concluded that the defendant waived a hearing, but did not make an explicit finding that the waiver was knowing and voluntary.

> As explained above, Section 1326(d) sets forth the requirements that a defendant must satisfy to sustain a collateral attack on a deportation order.  The defendant concedes that he did not exhaust his administrative remedies.  Moreover, he does not argue that he was deprived of the opportunity for judicial review.  Nonetheless, he argues that he should not have to satisfy Section 1326(d)'s first two prongs.  Although not styled as a claim that the stipulated removal process itself violates due process, the defendant's argument is that he "cannot be expected to have exhausted administrative remedies or appellate or judicial review rights" because "[h]e was *pro se,* [and] was not given the consideration of either a court date or the failsafe of an Immigration Judge reviewing his 'waiver' in such as a way as to meaningfully evaluate whether

13

he made a 'knowing and intelligent' [waiver]."  (ECF No. 21-1 at 16-17.)  In an argument made

for the first time in his post-argument letter, the defendant argues that he did not "did not

knowingly, intelligently, and voluntarily waive his right to a removal hearing."  (ECF No. 35 at

14.)  When a defendant collaterally attacks a removal order for an IJ's failure to find whether the

unrepresented defendant's waiver was voluntary, knowing and intelligent, the district court must

nevertheless find whether the waiver was voluntary, knowing and intelligent to determine if the

first two requirements of Section 1326(d) are excused.  *See United States v. Maldonado*, 18-CR-

308, slip op. at 29 (E.D.N.Y. Feb. 11, 2019).

       The defendant also submits an affidavit in which he describes his recollection of his

meeting with Agent Chrzanowski more than ten years ago.  According to the defendant, Agent

Chrzanowski "did not read back the [defendant's] answers or give [him] a chance to read over

the form, and "just told [him] to initial the pages."  (ECF No. 35-2 ¶ 11.)  The defendant also

claims that the agent gave him inaccurate information about his options:

> The agent told me I was going to be deported but if I agreed to be ordered deported
> now, I would get out of jail faster.  He told me that if I agreed, I would not have to
> be in jail to resolve the two open criminal cases that I had at that time before getting
> deported.  This turned out not to be true, but based on what he told me I believed
> that if I signed my own deportation, I would be able to get out of jail more quickly
> and at least be free in my own country, so I agreed to do so.  I understood that my
> only choices were to be deported now or first await the resolution of my two cases
> and then be deported, so I preferred the quicker option.

(*Id.* ¶ 12.)

       As discussed above, the defendant has the burden of proof in a collateral attack on the

validity of the underlying removal order.  *See* § 1326(d).  Accordingly, "[w]here a defendant has

signed a waiver of his rights to a hearing and to appeal, the burden is on the defendant to show

that his waiver was not knowing and voluntary."  *See Maldonado*, slip op. at 7-8 ("Given this

waiver, the burden is on [the defendant] to show that it was not knowing and voluntary."); *see*

*also Soto-Mateo*, 799 F.3d at 121; *United States v. Baptist*, 759 F.3d 690, 695 (7th Cir. 2014); *Richardson v. United States*, 558 F.3d 216, 222 (3d Cir. 2009); *United States v. Rangel de Aguilar*, 308 F.3d 1134, 1137, 1139 (10th Cir. 2002). *But see Ramos*, 623 F.3d at 680 ("The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings.").[11]

The Second Circuit has not squarely addressed whether a violation of Section 1003.25(b), standing alone, constitutes a denial of due process. However, in *United States v. Maldonado*, the Honorable Carol Amon concluded under similar circumstances that Maldonado did not carry his burden of showing that his waiver was not voluntary, knowing and intelligent. In that case, Maldonado, a citizen of Mexico, entered the United States illegally and was later convicted of robbery and weapons-related offenses. *Maldonado*, slip op. at 1. DHS served him with an NTA, alleging that he was removable and ordering him to appear before an immigration judge, but the NTA did not specify the hearing's date or time. *Id.* at 2. On the same day, Maldonado was served with a stipulated request for removal order and waiver of hearing form written in English and Spanish, and an immigration officer certified that Maldonado could read the documents by asking him to read aloud multiple paragraphs. *Id.* at 2-3. Maldonado also received a list of attorneys who could represent him at no cost. *Id.* at 2 n.1. He signed the stipulated removal request and initialed statements specifying that he waived his rights to counsel and a hearing before an immigration judge, as well as the opportunity to apply for various forms of relief from removal, including voluntary departure. *Id.* at 3. Maldonado also initialed this statement: "I have read this entire stipulation. I fully understand its consequences. I submit this request for

---

[11] The First Circuit rejected the Ninth Circuit's reasoning in *Ramos*, holding that "[w]here, as here, the government has produced a written and signed waiver, the Ninth Circuit's allocation of the burden of proof is a minority view and untenable." *Soto-Mateo*, 799 F.3d at 122.

removal voluntarily, knowingly and intelligently." *Id.* at 4.  An immigration judge issued a removal order based on Maldonado's stipulated removal request, but did not make an explicit finding that Maldonado's waiver was knowing and voluntary.  *Id.* at 4-5.

When he was later charged with illegal reentry in violation of Section 1326, Maldonado collaterally attacked the stipulated removal order, arguing among other things that the IJ's failure to make an explicit finding that the waiver was knowing and voluntary rendered the order fundamentally unfair, and that the IJ had no jurisdiction to issue the order because the NTA did not specify the time and date of a hearing.  *Id.* at 6.  Claiming that his waiver was actually not knowing and voluntary, Maldonado submitted a declaration stating:

> I signed the documents because he said it would go faster if I signed the papers.  I did not understand what I was signing.  I did not understand what was meant by voluntary departure or asylum.  I thought if I did not sign I could remain in custody for an indefinite length of time.

*Id.* at 4.  Judge Amon rejected Maldonado's waiver argument.  She highlighted that the stipulated removal request was written in English and Spanish (Maldonado's native language), and that Maldonado initialed statements that he read and understood the request and waived his rights knowingly and voluntarily.  Judge Amon found that Maldonado's declaration—filed 14 years after he signed the stipulated request—was insufficient to demonstrate that his waiver was invalid.  *Id.* at 7-8.

Like Maldonado, the defendant has not met his burden.  Although the defendant now asserts that he had only "a Spanish-language high school education in Chile," the form was written in both English and Spanish, the defendant's native language.  (ECF No. 35 at 13.)  The defendant does not claim that he was illiterate or otherwise incapable of understanding the Spanish used in the form.  *See Maldonado*, slip op. at 8 ("The Stipulated Request form was written in plain language in Spanish, which [the defendant] can read and understand."); *Baptist*,

759 F.3d at 696 ("It is uncontested that [the defendant] could read and understand the form before him, since the form was in English, his native language."); *Soto-Mateo*, 799 F.3d at 121 (noting that the defendant did not claim illiteracy when signing a stipulated removal request); *United States v. Tamayo-Baez*, 820 F.3d 308, 313-314 (8th Cir. 2016) (holding that the defendant's waiver was valid because he signed a stipulation written in English and Spanish stating that he "read and fully understood the form and that his decision to stipulate was voluntarily, knowingly, and intelligently made"); *cf. Ramos*, 623 F.3d at 683 ("[The defendant] did not receive a competent explanation of his rights in a language he could understand.  Given these circumstances, [the defendant's] signature on the Stipulated Removal form does not establish that his waiver was knowing and voluntary.").[12]

The defendant also claims that Agent Chrzanowski did not explain the meaning or legal consequences of voluntary departure.  However, the agent was not required to explain the terms of the agreement.  Indeed, under the regulation, an immigrant can waive the right to counsel.  *See* 8 C.F.R. § 1003.25(b); *see also Baptist*, 759 F.3d at 697 ("But 8 C.F.R. § 1003.25(b) contains no requirement that a defendant must be represented by counsel or that a stipulated removal order must be orally explained to him.").  The defendant also acknowledged that he was "advised of my right to be represented by an attorney of my choice, at my own expense, during these proceedings.  I have also received a List of Free Legal Services Providers."  (ECF No. 21-3 at 2.)  The stipulation listed as an attachment "Newark List of Free Legal Services Providers."  (*Id.* at 1.)  The defendant does not deny that the immigration enforcement agent advised him of his right to counsel and provided him a list of attorneys who could represent him at no cost.  When a

---

[12] The defendant suggests but does not allege outright that he did not read the form.  He states, "I do remember the agent never read out any of the documents I was signing and initialing to me or gave me time to read them through."  (ECF No. 35-2 ¶ 14.)

defendant has been advised of his or her right to counsel and provided the contact information of free legal services providers, a defendant's claim that he or she did not understand the terms of a stipulated removal request does not establish that waivers contained in the stipulation were unknowing. *See Maldonado*, slip op. at 2 n.1 (noting that the defendant was provided a list of attorneys who were available to represent him at no cost); *Soto-Mateo*, 799 F.3d at 122 ("The record indicates that the appellant was twice informed, in his native language, of his right to retain an attorney and was provided a list of organizations offering free legal assistance. . . . He does not suggest that he wanted an attorney but was unable either to find one or to afford one."); *Baptist*, 759 F.3d at 696 ("The order clearly stated that [the defendant] acknowledged receiving a list of free legal service providers and was informed that he could be represented by an attorney, but instead chose to represent himself.").

Like Maldonado, the defendant claims that Agent Chrzanowski presented his options as "rapid deportation now, or to eventually be ordered deported later."  (ECF No. 35 at 13.)  *See Maldonado*, slip op. at 10 ("[The defendant's] only suggestion of impropriety on the part of the immigration officials is that he was allegedly told that if he 'wanted a hearing it would take a long time and [he] would be custody while [he] waited.'").  The *Maldonado* court concluded that "a suggestion that signing a Stipulated Request will speed up the process is not the same as being tricked or pressured into signing the form, and that "[the defendant] made a choice to expedite his removal proceedings and his regret [now] is not tantamount to involuntariness." *Id.* (internal quotation marks and citation omitted).  Other circuit courts have held similarly.  *See Soto-Mateo*, 799 F.3d at 121 (holding that the defendant's waiver was knowing and intelligent because he did claim "any plausible basis for believing that he was pressured into surrendering his rights," and "[t]o the precise contrary, his unsolicited letter to the immigration officer attests to his eagerness

to 'speed up the process' and be deported as quickly as possible"); *Baptist*, 759 F.3d at 696 ("Though [the defendant] contends that he was told to 'hurry up and sign [the form] if he wanted to go back to Belize,' he never asserts that anyone tricked or pressured him into signing the form[.] . . ."). As the defendant concedes, he "preferred the quicker option," which is the whole point of the stipulated removal process.

The defendant has failed to establish that his waiver was not voluntary, knowing and intelligent. Accordingly, he must satisfy the first two requirements of Section 1326(d) to attack collaterally the Stipulated Removal Order. As he concedes, he has not demonstrated that he has exhausted administrative remedies that may have been available to seek relief against the Stipulated Removal Order or that the deportation proceedings at which the order was issued deprived him of the opportunity for judicial review. (ECF No. 21-1 at 16-17.). Section 1326(d)'s requirements are conjunctive, and the defendant's failure to satisfy the first two criteria "forecloses collateral attack and dismissal of the indictment on the basis of the invalidity of the underlying deportation order." *Nunez*, 375 F. Supp. 3d at 239. Accordingly, I need not reach whether the IJ's failure to issue an express finding as to the waiver's validity in violation of Section 1003.25(b) was fundamentally unfair. *See Fernandez-Antonia*, 278 F.3d at 157 (holding that where the defendant fails to establish any one requirement of Section 1326(d), the court need not consider the remaining requirements); *see also United States v. Sanchez-Peralta*, No. 97-CR-536, 1998 WL 63405, at *11 (S.D.N.Y. Feb. 13, 1998).

In any case, the defendant has not met his burden of showing that the IJ's failure to make an explicit finding that the waiver was knowing and voluntary rendered the entry of the Stipulated Removal Order fundamentally unfair. "[F]or an alien to demonstrate on collateral review that his hearing was so fundamentally unfair that it constituted a denial of his Fifth

Amendment right to due process, he must show both a fundamental procedural error and prejudice resulting from that error." *Fernandez-Antonia*, 278 F.3d at 159. "In order to show prejudice, he must show that, absent the procedural errors, he would not have been removed." *Id.* In his post-argument letter, the defendant claims that if he had understood the different legal consequences of removal and voluntary departure or if Agent Chrzanowski had explained those differences, "I would have asked for the chance to request voluntary departure from a judge even if it meant some more time in jail, because my goal was always to live in the U.S. with my family." (ECF No. 35-2 ¶ 13.) However, as discussed above, Agent Chrzanowski was not obligated to provide the defendant counsel, and the defendant waived his right to an attorney.

Moreover, given the defendant's history, it is difficult to see how the result would have been different. "For a deportee to show prejudice on the theory that he was denied the opportunity to seek voluntary departure, 'the noncitizen must demonstrate both a reasonable probability that he would have sought voluntary departure *and* that such relief would have been granted.'" *United States v. Pineda*, No. 18-CR-523, 2020 WL 5981901, at *7 (E.D.N.Y. Oct. 8, 2020) (quoting *United States v. Brown*, 354 F. Supp. 3d 362, 366 (S.D.N.Y. 2018)). Even assuming that the defendant would have sought voluntary departure,[13] "he nonetheless bears the burden to demonstrate an IJ would have granted such relief." *Id.* "IJs have broad discretion to grant voluntary departure." *Id.* (citing *Patino v. Holder*, 520 F. App'x 18, 20 (2d Cir. 2013)). The Board of Immigration Appeals ("BIA") has described the factors to be considered in connection with the review of a request for voluntary departure:

---

[13] The defendant suggests but does not explicitly claim that he would have sought voluntary departure. In his post-argument affidavit, he states, "If I had been given the opportunity to depart voluntarily, I had the resources to buy my own plane ticket back to Chile." (ECF No. 35-2 ¶ 16.) Stating that he had resources to purchase a ticket is insufficient to show that the defendant would have requested voluntary departure.

> [M]any factors may be weighed in exercising discretion with voluntary departure applications, including the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. We further stated that discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*Id.* (quoting *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 819 (B.I.A. 1999)). The defendant has failed to demonstrate that there is a reasonable probability that an IJ analyzing these factors would have granted him a voluntary departure. While the defendant argues that his ties to the United States, including his family in New York, "would have counseled in favor of relief,"[14] (ECF No. 35 at 14), his significant criminal history would have weighed against grant of voluntary departure. It may be that IJs have, as the defendant argues, granted voluntary departure to "noncitizens with similar or less favorable circumstances." (*Id.* at 14, 15 & n.11.) But just because an IJ could have granted the defendant voluntary departure, it does not follow that there was a reasonable probability that the IJ in this case would have granted such a request. Voluntary departure is rare, and in 2009 when the IJ entered the Stipulated Removal Order, such relief was granted in only 14% of cases. *See* Exec. Office for Immigration Review, U.S. Dep't of Justice, FY 2009 Statistical Year Book (Mar. 2010), at Table 14; *see also Maldonado*, slip op. at 17-18 (citing the low percentage of cases in which voluntary departure was granted, and concluding that "there [was] no reasonable probability that an Immigration Judge would have exercised his discretion to grant such relief").

---

[14] The defendant cites his "roughly ten years of residency in the United States." (ECF No. 35 at 14 n.10.) However, when the IJ entered the Stipulated Removal Order, the defendant had resided in the United States for approximately four years.

Finally, as explained above, the defendant has not established that the waiver was involuntary; in fact, the record shows otherwise.  Thus, the IJ's failure to say so explicitly does not establish prejudice.[15]

### b.      Violation of 8 C.F.R. § 1003.15(b)

As discussed above, the defendant has not satisfied the first two prongs of Section 1326(d), and he therefore cannot sustain a collateral attack on the underlying removal order.  I need not determine whether the government's failure to send a curative NTA specifying the time and date of the hearing was fundamentally unfair.  *See Banegas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019) ("[A]n NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien."), *cert. denied sub nom. Gomez v. Barr*, 140 S. Ct. 954 (2020); *see also Chery v. Garland*, No. 18-1036, 2021 WL 4805217, at *5 (2d Cir. Oct. 15, 2021) ("*Banegas Gomez* remains good law even after the Supreme Court's opinion in *Niz-Chavez*.").

In any event, the defendant has not shown that the absence of a date and time in the NTA rendered the entry of the Stipulated Removal Order fundamentally unfair.  He fails to establish that absent the procedural error—that is, if the NTA specified the hearing date and time or if he received a curative notice—he would not have signed the Stipulated Removal Request and been removed.  The defendant concedes that he waived his right to hearing to expedite his departure. (ECF No. 35-2 ¶ 12.)  He does not establish prejudice, and without addressing if the NTA's

---

[15] Because the defendant has not shown prejudice, I need not address whether the IJ's failure was a fundamental procedural error.

deficiency was a fundamental procedural error, I find that the defendant has not satisfied Section 1326(d)(3).

## CONCLUSION

For these reasons, the defendant's motion to dismiss the indictment is denied.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
        November 9, 2021